1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Linda Weirick, | No. CV-17-03817-PHX-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Linda Weirick's ("Plaintiff") appeal from the Social Security Commissioner's ("Commissioner") denial of her application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act. (Doc. 14 at 1). On appeal, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by performing analysis and making findings that were not supported by the record, inappropriately evaluating medical opinion evidence, and incorrectly evaluating Plaintiff's subjective symptom testimony. (*Id.* at 11–13, 19). The Court now rules on Plaintiff's appeal.

**I.    Background**

Plaintiff was forty-seven years old on February 1, 2012, which she alleges was the onset date of her disability. (*Id.* at 2). Plaintiff has a high school education and past work experience as a billing clerk, billing supervisor, and lost claim clerk. (*Id.*, Tr. 49). Plaintiff claims that she cannot work due to constant pain in her back and pelvis, as well as urinary incontinence, which make it difficult for her to sit and stand for long periods of

time or lift more than ten to fifteen pounds. (Doc. 14 at 2). Plaintiff asserts that medications limit her ability to concentrate and focus on tasks, and fail to provide sustained pain relief. (*Id.*)

On October 21, 2013, Plaintiff filed a Title II Application for SSDI benefits. (*Id.* at 1, Tr. 21). Plaintiff's claim was initially denied on April 29, 2014, and denied again on reconsideration on October 16, 2014. (Tr. 21). Plaintiff subsequently filed a written request for hearing on October 28, 2014, and appeared and testified at a hearing on February 25, 2016. (*Id.*) The ALJ issued a decision on March 24, 2016, concluding that Plaintiff was not under a disability within the meaning of the Social Security Act for the relevant dates. (*Id.* at 21, 33). The Appeals Council denied review on August 18, 2017, making the ALJ's decision to deny benefits the Commissioner's final decision. (*Id.* at 1). This appeal followed.

## II. Legal Standard

A reviewing court, in dealing with a judgment from an administrative agency which it alone is authorized to make, may rely only on evidence discussed by the ALJ in making its decision. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Thus, this Court's review is constrained to the reasons asserted by the ALJ and evidence supporting those reasons. *See Connett*, 340 F.3d at 874.

### A. Definition of a Disability

A claimant can qualify for Social Security disability benefits only if she can show that, among other things, she is disabled. 42 U.S.C. § 423(a)(1)(E). A disability, as relevant to this matter,[1] is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] An individual is also considered disabled if said individual "has attained the age of 55 and is blind [and, by virtue of that blindness, is unable] to engage in substantial gainful activity . . . ." 42 U.S.C. § 423(d)(1)(B). Because Plaintiff is neither over fifty-five years old nor blind, this definition is irrelevant to the Court's determination of Plaintiff's disabled status.

continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is disabled only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B. The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential evaluation process for evaluating a claim of disability. 20 C.F.R. § 404.1520(a)–(h); *see also Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1034 (9th Cir. 2003). If the ALJ determines that the claimant is "disabled" or "not disabled" at any step of the inquiry, the ALJ ends the evaluation process. 20 C.F.R. § 404.1520(a)(4). If the ALJ does not make such a finding, the ALJ will proceed to the next step in the process. *Id.* The claimant bears the burden of proof at steps one through four, but that burden shifts to the Commissioner at step five. *Tacket v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In making a determination on the claimant's disability through the five-step process, the ALJ must "consider all evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3). This evidence includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

#### i. Substantial Gainful Activity

At the first step of the evaluation process, the ALJ determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. *Id.*

The ALJ found that Plaintiff had not engaged in "substantial gainful activity during the period from her alleged onset date of February 1, 2012 through her date last insured of December 31, 2015." (Tr. 24). Accordingly, the ALJ proceeded to the next step in the evaluation process.

//

### ii. Severe Medical Impairments

At the second step, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "If [the claimant] do[es] not have a severe medically determinable physical or mental impairment . . . [the ALJ] will find that [the claimant is] not disabled." *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). Examples of basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for setting, hearing and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.*

Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509 (incorporated by reference in *id.* § 404.1520(a)(4)(ii)).

The ALJ found that, through the date last insured, Plaintiff suffered from two physical impairments: genitourinary disorder and spine disorder. (Tr. 24). The ALJ relied on evidence in the medical record which "substantiate[d] [Plaintiff's] allegations that these impairments imposed more than a minimal impact on [Plaintiff's] ability to perform basic work activities for a continuous period of twelve consecutive months." (*Id.*) The ALJ concluded that Plaintiff did not suffer from any severe mental impairments. (*Id.* at 24–25).

Because the ALJ found that Plaintiff suffered from two physical medical impairments, she continued to the next step.

### iii. Severity of Impairments and Residual Functional Capacity

At the third step, having found a medically determinable impairment, the ALJ must consider the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(iii). This consideration requires that the ALJ determine if the impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If the impairment meets or equals a listed impairment, and meets the duration requirement, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's residual functional capacity ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting. [The claimant's] residual functional capacity is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* § 404.1545(a)(1).

The ALJ considered the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and found that Plaintiff did not have any impairments that met or equaled one of the listed impairments. (Tr. 26); 20 C.F.R. 404.1520(d), 404.1525, 404.1526. The ALJ specifically considered the 1.00 series of listings (musculoskeletal system) and the 6.00 series of listings (genitourinary disorders). (Tr. 26). Because the ALJ found that Plaintiff's impairments did not meet a listed impairment, the ALJ assessed Plaintiff's RFC with "careful consideration of the entire record." (*Id.*)

The ALJ determined that Plaintiff had the RFC to "perform light work . . . except the claimant can stand/walk for two hours at a time before needing to sit for 10 minutes; never climb ladders, ropes, and scaffolds; occasionally kneel, crouch, crawl, and climb ramps and stairs; frequently stoop; and frequently reach overhead with the right upper extremity." (*Id.*) The ALJ additionally determined that Plaintiff could "never be around unprotected heights[,] . . . [could] occasionally operate a motor vehicle[,] . . . [was] limited to frequent exposure to humidity, wetness, dust, odors, fumes, and pulmonary

irritants[, and] . . . [was] limited to simple work-related decisions when dealing with changes in the work setting." (*Id.*) Finally, the ALJ concluded that, "in addition to normal breaks," Plaintiff would be "off task 5 percent of the time in an eight-hour workday." (*Id.*)

### iv. Ability to Perform Past Relevant Work

At the fourth step, the ALJ considers the claimant's ability to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

Plaintiff's past relevant work included experience as a billing clerk, billing supervisor, and loss claim clerk. (Tr. 31). The ALJ, relying on the previously-determined RFC and testimony from an impartial vocational expert, found that Plaintiff was "unable to perform any past relevant work." (*Id.*)

### v. Ability to Adjust to Other Work

At the fifth and final step, the ALJ considers whether the claimant can "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). As noted above, the burden of proof shifts to the Commissioner to show that the claimant can make such an adjustment. *Tacket*, 180 F.3d at 1100. In making the determination, the ALJ considers the claimant's RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

The ALJ considered Plaintiff's RFC, age, education, and work experience in making a determination as to whether Plaintiff would be able to adjust to other work. (Tr. 32). The ALJ noted that Plaintiff was forty-seven years old, had at least a high school education, and was able to communicate in English. (*Id.* at 31). The ALJ asked the vocational expert whether jobs existed in the national economy for a hypothetical

individual with Plaintiff's age, education, work experience, and RFC. (*Id.* at 32). The vocational expert testified that the hypothetical individual would be able to perform occupations such as booth cashier, office helper, and routing clerk. (*Id.*)

Ultimately, because Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," the ALJ made a finding of "not disabled." (*Id.*)

### III. Discussion

Plaintiff brings several claims asserting that the ALJ erred in denying her benefits. The Court has distilled Plaintiff's allegations to three fundamental complaints: (1) the ALJ inappropriately rejected Plaintiff's symptom testimony without offering specific, clear, and convincing reasons for doing so (Doc. 14 at 19); (2) the ALJ inappropriately weighed various medical opinions (*Id.* at 12–13, 19); and (3) the ALJ erred by making findings that were unsupported by the record and contradictory to treating physician testimony (*Id.* at 11–12). The Court will now discuss each claim of error on appeal in turn.

#### A. Whether the ALJ Failed to Reasonably Evaluate Plaintiff's Subjective Symptom Testimony

The Court first turns to Plaintiff's argument that the ALJ rejected Plaintiff's subjective symptom testimony without citing clear and convincing evidence in the record. (*Id.* at 19).

##### i. Legal Standard

An ALJ must engage in a two-step analysis when evaluating a claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). In the first step, the ALJ must determine whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Id.* In this step, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration," must be supported by "medical signs or laboratory findings" which show that "a medically determinable impairment is present."

*Id.* The first step requires "objective medical evidence from an acceptable medical source" to establish the claimant's impairment and symptoms. *Id.* If there is no medically determinable impairment that could be reasonably expected to produce the claimant's symptoms, the ALJ will end the analysis. *Id.* at *4.

If the claimant's symptoms could be reasonably produced by an identified medical impairment, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related functions. *Id.* The ALJ is required to "examine the entire case record, including the objective medical evidence; [a claimant's] statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the [claimant's] case record." *Id.* If the ALJ makes a finding that the claimant is not disabled, the ALJ must "mak[e] every reasonable effort to obtain a complete medical history." *Id.*

Absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). Furthermore, the ALJ "may only find [a claimant] not credible by making specific findings as to the credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "The clear and convincing standard is the most demanding requirement in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). The ALJ may not fulfill this requirement by making general findings—the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

When assessing the credibility of a claimant, the ALJ may consider a range of factors including:

(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). The ALJ may additionally consider: "[t]he location, duration, frequency, and intensity of pain or other symptoms;" the medication used to relieve symptoms, including side effects, dosage, and effectiveness; other treatments or methods that has relieved the claimant's symptoms; and any other factors related to the claimant's functional limitations and restrictions due to their symptoms. SSR 16-3p, 2016 WL 1119029, at *7. If evidence reasonably supports either confirming or reversing the ALJ's decision, the Court "may not substitute [its] judgment for that of the ALJ." *Ghanim*, 763 F.3d at 1163 (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)).

### ii. Analysis

Plaintiff alleged "chronic pain, lumbar degenerative disc disease, pelvic mesh implant, bladder incontinence, lower extremity radiculitis, and right upper quadrant pain." (Tr. 26). The ALJ also noted that Plaintiff "had pain and discomfort in multiple areas and did not feel she could concentrate or be dependable at work due to taking pain medications." (*Id.*) The ALJ determined, under the first step of the analysis, that Plaintiff's medically-determinable impairments could reasonably be expected to produce the alleged symptoms. (*Id.* at 27) Under the second step of the analysis, however, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were only "partially credible." (*Id.*).

Plaintiff testified that she was in "constant pain" and "constant[ly] running to the bathroom," which led to an inability to focus and a necessity to lay down and change positions to "try[] to get comfortable." (*Id.* at 54). Plaintiff testified that everything she did made it worse, including standing, sitting, and lying down. (*Id.* at 55–56). Plaintiff noted that doctors had prescribed medication for pain, and that the medication "help[ed] a

little bit." (*Id.* at 57). Plaintiff claimed, however, that the medication further affected her concentration, and caused her to be less focused. (*Id.*) Additionally, Plaintiff testified that she would typically lie down, in an attempt to get comfortable, on average three times per day—for twenty to thirty minutes per occasion—and that she could only sit down for an hour before she needed to stand up or lie down. (*Id.* at 59–60).

The ALJ found Plaintiff's testimony inconsistent with third-party testimony, Plaintiff's own testimony, and the objective medical evidence; specifically:

- Plaintiff's daily activities, including the fact that she shopped at the grocery store, drove, attended church, prepared meals, visited with family, read books, watched television, fed her pets, did her own laundry, and cared for herself;
- Objective medical evidence, including MRIs, EGD's, EMG's, colonoscopies, CT scans and other examinations that the ALJ determined were inconsistent with the extent that would be expected for disabling impairments;
- Plaintiff's ability to continue working, notwithstanding her pain and incontinence, until "she stopped working, at least in part, due to the fact that her company was downsized;"
- Evidence in the record showing multiple occasions where Plaintiff was without pain or other significant complaints;
- Statements by the Plaintiff and her husband that Plaintiff was capable of managing finances, driving, shopping, and reading.

(*Id.* at 27–28).

The ALJ properly relied on the above-referenced testimony in discounting Plaintiff's symptom testimony. The ALJ provided specific references to exhibits in the record that weakened Plaintiff's symptom testimony. (*Id.*)

For example, the ALJ pointed to the fact that Plaintiff's "daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and

limitations." (*Id.* at 27). The ALJ may discount a claimant's subjective complaints when they are inconsistent with her reported activities. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Additionally, the ALJ noted that Plaintiff was able to work despite her symptoms for a significant period of time until her company downsized. (Tr. 27). This, too, is evidence that the ALJ may use to discount a claimant's subjective complaints. *See Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988). The ALJ also noted that Plaintiff told her doctor that she "got good relief from her pain medication regimen, reporting at least 50 percent pain relief" despite testifying that the pain medication helped only "a little bit." (Tr. 28, 800, 810). The ALJ also noted several medical visits where Plaintiff alleged no pain whatsoever, despite Plaintiff's testimony of "constant pain." (Tr. 27, 54). Where a claimant's allegations of pain are not substantiated with doctor visits, this evidence supports a finding that the claimant's symptom testimony does not comport with the objective medical evidence. *See Roberts v. Berryhill*, 734 F. App'x 489, 491 (9th Cir. 2018) (finding that a claimant's allegation of debilitating pain and fatigue, without substantiation from intermittent doctor visits, was not entirely credible). Furthermore, the ALJ may properly rely on evidence that pain and symptoms are controlled with medication in identifying whether a claimant is disabled. *Petersen v. Berryhill*, 737 F. App'x 329, 332 (9th Cir. 2018).

Finally, Plaintiff contends that the ALJ provided "no attempt to explain how or why the[] test results conflicted with [Plaintiff's] testimony." (Doc. 14 at 20). The ALJ, however—noting that "the objective evidence [did] not wholly discredit [Plaintiff's] contention of the existence of pain and other symptoms"—found that the provided objective evidence did not illustrate objective abnormalities to the extent that would be expected in an individual with a disabling impairment. (Tr. 27). The ALJ specifically referenced several normal and unremarkable medical examinations which conflicted with Plaintiff's allegations. (*Id.*) Medical evidence is "a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)). The presence of medical examinations which could be used

to support Plaintiff's allegations are not dispositive, as "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence" and the Court relies on the ALJ's interpretation of the evidence in reviewing the decision. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, the ALJ properly discounted Plaintiff's symptom testimony using specific, clear, and convincing examples from the record. Accordingly, the Court will not reverse the decision of the ALJ on this basis.

**B.     Whether the ALJ Inappropriately Weighed the Medical Opinion Evidence and Performed Necessary Analysis under 20 C.F.R. § 404.1527(c)**

The Court next turns to Plaintiff's argument that the ALJ improperly weighed the opinions of treating physicians Dr. Manzanares and Dr. Feldman. (Doc. 14 at 13). Plaintiff further argues that the absence of discussion of factors under 20 C.F.R. § 404.1527(c)—including the extent of the treatment relationship, frequency of examination, and specialization—is "reversible legal error." (Doc. 14 at 19).

**i.     Legal Standard**

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester*, 81 F.3d at 830. A treating physician's opinion is entitled to "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). As a general rule, the opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician, but less than a treating physician. *Andrews v. Shalala*, 53 F.3d 1035, 1040–41 (9th Cir. 1995).

The Ninth Circuit further requires that, to reject a treating or examining doctor's uncontradicted opinion, the ALJ "must state clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). If a

treating physician's opinion is contradicted by an examining physician, the ALJ may reject the opinion only if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830)). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray*, 554 F.3d at 1228).

"When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675 (citing 20 C.F.R. 404.1527(c)(2)–(6)). An ALJ's failure to appropriately analyze according to these factors "constitutes reversible legal error" when the ALJ rejects the treating physician's opinion outright. *Id.* at 676. If an ALJ affords the opinion of a treating physician something less than controlling weight, the ALJ must afford deference to the opinion according to the factors provided in 20 C.F.R. § 404.1527(c). *Weiskopf v. Berryhill*, 693 F. App'x 539, 541 (9th Cir. 2017).

### ii. Analysis

Plaintiff claims that the ALJ erred in giving little weight to the opinions of Drs. Manzanares and Feldman. (Doc. 14 at 13). The ALJ combined her analysis of the opinions of both doctors as they relate to Plaintiff's physical state, and addressed each doctor's opinion as related to Plaintiff's mental state separately. The Court will similarly address the ALJ's analysis. The Court will subsequently consider whether the ALJ appropriately analyzed all of the factors as required under 20 C.F.R. 404.1527(c).

### a. Dr. Manzanares's and Dr. Feldman's Physical Opinions

The ALJ gave little weight to both of these opinions for the same reasons: (1) the opinions were too extreme in light of the objective medical evidence; (2) the opinions were too extreme in light of the consultative examiner and State agency opinions; and (3)

the opinions were in checklist format with little supporting objective evidence provided. (Tr. 29).

With regard to the first two reasons provided by the ALJ, the ALJ may reject a treating physician's opinion when it is contradicted by the objective medical evidence. *Ruckdashel v. Colvin*, 672 F. App'x 745, 745–46 (9th Cir. 2017). Furthermore, the ALJ is responsible for resolving conflicts in medical testimony. *See Andrews*, 53 F.3d at 1039. The ALJ relied on specific and legitimate reasons supported by substantial evidence in the record, including evidence of the laboratory findings, medication effectiveness, Plaintiff's daily activities, and the opinions of other physicians related to Plaintiff's physical condition. The ALJ, in giving little weight to the opinions of these physicians, specifically referenced subjective inconsistencies that were discussed elsewhere in the decision.

Plaintiff relies on examples of clinical findings in the record that support Plaintiff's position, and alleges that the ALJ must mention these findings specifically in rendering a decision. (Tr. 15). However, as explained above, the ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews*, 53 F.3d at 1039. In this case, the ALJ weighed the opinions of the various treating, examining, and consulting physicians, along with the supporting clinical findings for each opinion. (Tr. 27–31). The ALJ referenced specific exhibits and accorded the abnormal clinical findings an appropriate weight based on the record as whole. (*Id.*) The mere presence of supporting medical examinations does not permit the Court to substitute its judgment for that of the ALJ where the evidence could reasonably support either affirming or denying the ALJ's decision. *Tommasetti*, 533 F.3d at 1041; *e.g.*, *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

Furthermore, an "ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)) (internal punctuation and citations omitted). Because the record contains objective findings and

opinions from other physicians that contradict the opinions provided in the checklist reports offered by Drs. Manzanares and Feldman, the ALJ appropriately afforded those opinions little weight. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998), *as amended* (Jan. 26, 1999).

### b. Dr. Feldman's Mental Opinion

The ALJ gave multiple reasons for not fully crediting Dr. Feldman's mental opinion. (Tr. 30). Specifically, the ALJ did not fully credit Dr. Feldman's mental opinion because the opinion: (1) conflicted with his own progress notes; (2) was primarily based on a sympathetic view of Plaintiff's subjective complaints; and (3) was inconsistent with the doctor's specialty. (*Id.*)

An opinion's inconsistency with the doctor's own medical records is a specific and legitimate reason to discredit a doctor's testimony. *Connett*, 340 F.3d at 874–75. Dr. Feldman's previous notes indicating that Plaintiff "had normal mood, affect, and was alert and oriented" were contrary to Dr. Feldman's conclusion that Plaintiff suffered from moderately severe pain, fatigue, and depression. (Tr. 30, 1028). As the ALJ is responsible for resolving conflicts in medical testimony, including conflicting testimony of the same physician, this Court cannot substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

The ALJ may properly discount an opinion of a treating physician that is based on a claimant's subjective complaints if the ALJ properly discounts the claimant's symptom testimony. *Tommasetti*, 533 F.3d at 1041 (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). Here, the ALJ properly discounted Plaintiff's symptom testimony for the reasons stated above. Where a treating physician's opinion is based "to a large extent" on "an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti*, 533 F.2d at 1041). Where there is sufficient evidence to support the ALJ's decision, this Court may not substitute its own determination. *E.g.*, *Flaten*, 44 F.3d at 1457.

The regulations permit the ALJ to consider the doctor's specialty when determining what weight to give the opinion. 20 C.F.R. § 404.1527(c)(5). Because the ALJ complied with permitted regulations when using the fact that Dr. Feldman works at an orthopedic practice—not as a psychiatrist or general practitioner—to weigh his opinion as to Plaintiff's depression, this Court finds that it was not legal error for the ALJ to adjust the weight of Dr. Feldman's opinion because of this fact.

In conclusion, the ALJ appropriately gave little weight to Dr. Feldman's mental opinion related to Plaintiff's depression and her related off-task amount.

### c. Dr. Manzanares's Mental Opinion

The ALJ did not fully credit Dr. Manzanares's mental opinion because the opinion: (1) contained primarily ambiguous terms; and (2) was contradicted by other examining doctors whose opinions were accepted by medically-acceptable laboratory and clinical findings and consistent with the record as a whole. (Tr. 30).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Where, as here, the ALJ found a physician's statements about a medication's side effects ambiguous, the Court defers to the ALJ's interpretation of those ambiguities. Furthermore, and as noted above in the discussion related to Dr. Feldman's mental opinion, the inconsistencies present in Dr. Manzanares's opinion—as compared to the opinions by other medical professionals and the record as a whole—provide a specific and legitimate reason to discredit Dr. Manzanares's testimony.

### d. Appropriate Analysis under 20 C.F.R. 404.1527(c)

Because the ALJ did not give the opinions of treating physicians Manzanares and Feldman controlling weight, the ALJ was required to consider all factors contemplated in the regulations when determining the weights to be associated with the opinions. 20 C.F.R. 404.1527(c); *see also Weiskopf*, 693 F. App'x at 541 (holding that an ALJ's failure to engage in analysis of factors including "length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship"

resulted in a failure to sufficiently explain why treating physicians' opinions did not deserve controlling weight). While the ALJ is not required to make "an express statement that she considered all of the factors outlined in 20 C.F.R. § 404.1527(c)," there must be some indication that the factors were properly considered. *Kelly v. Berryhill*, 732 F. App'x 558 n.4 (9th Cir. 2018). The Court finds no evidence that the ALJ considered these factors in weighing the opinions of these treating doctors, and consequently committed "legal error." *Trevizo*, 871 F.3d at 676.

Notwithstanding a legal error committed by the ALJ, the Court can still uphold the decision where that error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The general principle is that an ALJ's error is harmless when "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

Plaintiff fails to meet her burden of showing that the ALJ's error was harmful, and instead relies only on the absence of discussion of the factors as evidence of legal error which justifies reversal of the ALJ's decision. (Doc. 14 at 12, 19) The Court disagrees. Here, the ALJ provided several reasons (discussed above) for affording the opinions of these treating physicians little weight. Several of these reasons are directly related to the factors at issue, including supportability of the opinion, consistency, and specialization. There is no indication—in the parties' briefs or otherwise in the record—that the ALJ's explicit discussion of the extent of the treatment relationships and frequency of examination would in any way affect the validity of the ALJ's decision. "[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 533 F.3d at 1162. As such, this Court determines that the ALJ's failure to indicate a consideration of all of the factors listed in 20 C.F.R. 404.1527(c), while a legal error, was not harmful and therefore need not lead to a reversal of the decision.

**C. Whether the ALJ's Off-Task and Absenteeism Findings Were Supported by the Record**

The Court finally turns to Plaintiff's argument that the fact that the ALJ "assessed a 5% off task limitation" and failed to discuss the absenteeism rate opined by medical physicians is legal error. (Doc. 14 at 12).

**i. Legal Standard**

The ALJ's denial of disability benefits may be set aside "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton*, 331 F.3d at 1035. Substantial evidence is "more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins*, 466 F.3d at 882 (citing *Young v. Sullivan*, 911 F.3d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). When considering the evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). "If the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, the court may not substitute its judgment for that of the [ALJ]." *Flaten*, 44 F.3d at 1457. This necessarily means that "[i]f the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton*, 331 F.3d at 1035.

**ii. Analysis**

The ALJ, in making a determination as to Plaintiff's off-task limitations and absenteeism rate, gave "significant weight to the physical opinion of the consultative examiner." (Tr. 28). Specifically, and contrary to Plaintiff's assertion that "[n]o doctor has offered a conflicting opinion as to the rate [Plaintiff] would be off task (greater than 10%) and no doctor has opined to absences less than one time per month," (Doc. 14 at

- 18 -

12), the consultative examiner provided no notes indicating that Plaintiff would be unable to complete an eight-hour day or a forty-hour week, (Tr. 721–23). While absence of evidence is not always affirmative evidence to the contrary, in this case it was the responsibility of the ALJ to consider this testimony and determine whether it conflicted with other medical opinions related to Plaintiff's off-task limitations. *See Andrews*, 53 F.3d at 1039. The ALJ specifically referred to this opinion of the consultative examiner, giving the opinion "significant weight." (Tr. 28). Furthermore, the ALJ gave "some weight" to the opinion of a psychological consultative examiner who "opined that there were no limitations associated with [Plaintiff's] psychological diagnoses." (*Id.* at 29).

Plaintiff claims that the ALJ provided "no explanation and . . . no citation to any supportive evidence at all" when asserting that Plaintiff would be off-task only five percent of the day, and made no reference to the number of absences. (Doc. 24 at 3). The ALJ's decision, however, specifically identifies the supporting medical opinions as mentioned above. Furthermore, the ALJ afforded "little weight" to Dr. Feldman's opinion that Plaintiff would be off-task for up to twenty percent of an eight-hour workday. (Tr. 30). A reasonable interpretation of this weighting, along with the ALJ's giving of "some credit" to the doctor's contention that side effects from the medication could affect Plaintiff's concentration, support the ALJ's determination of a five percent off-task limitation per day.

With regard to Plaintiff's off-task and absenteeism rate the Court finds substantial evidence that reasonably supports the ALJ's conclusions.

//
//
//
//
//
//
//

## IV. Conclusion

For the reasons stated above,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly.[2]

Dated this 13th day of November, 2018.

James A. Teilborg
Senior United States District Judge

---

[2] To the extent that a mandate is required, the judgment shall serve as the mandate.